# IN THE COURT OF APPEALS OF IOWA

No. 19-0578
Filed June 17, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**STEPHEN EMBREE,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.

Stephen Embree appeals his conviction of sexual abuse in the second degree. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

Stephen Embree appeals his conviction of sexual abuse in the second degree.[1] He argues there was no sexual purpose to his contact with the child. The State argues sufficient evidence was presented to the jury regarding Embree's sexual purpose.

Embree purchased a duplex in 2013. Embree immediately had an outdoor swingset removed from the yard. He resided in the duplex while repairing the units. The southern unit faced a home owned by a family with two young children. In the fall of 2016, the older child approached Embree in Embree's yard. Eventually, the younger child began to take part in the outdoor interactions. The family and Embree became acquainted, and the older child was allowed into Embree's home to play on his Xbox. The family would only allow the younger child to enter Embree's home if accompanied by the older sibling. However, the younger child did sometimes visit Embree's home unaccompanied, against the parents' wishes. At times, other neighborhood children would also visit Embree's home. Due to the renovations in Embree's duplex, the children used the Xbox in both Embree's bedroom and living room. The children also entered Embree's bedroom for horseplay when the Xbox was in the living room.

In February 2017, the younger child, then five years old, told the father about physical contact with Embree. The child said Embree used his hand to touch the child's genitals with his hand over the child's clothing. The father contacted the police. Embree was interviewed and admitted to physical contact with the

---

[1] Although Embree changed his name during the course of proceedings, we will continue to refer to him by that name.

child. A jury convicted Embree of sexual abuse in the second degree in January 2019. Embree appeals, challenging the sufficiency of the evidence supporting his conviction.

"We review challenges to the sufficiency of evidence presented at trial for correction of errors at law." *State v. Alvarado*, 875 N.W.2d 713, 715 (Iowa 2016) (quoting *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011)). "[W]e review the evidence in the light most favorable to the State to determine if, when considered as a whole, a reasonable person could find guilt beyond a reasonable doubt." *State v. Pearson*, 514 N.W.2d 452, 456 (Iowa 1994). The verdict will stand if supported by substantial evidence. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* "The State has the burden to prove every fact necessary to constitute the crime with which the defendant is charged, and the evidence presented must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Fintel*, 689 N.W.2d 95, 100 (Iowa 2004).

In order to convict Embree of sex abuse in the second degree, the State had to prove (1) Embree committed an act of sexual abuse and (2) "the other person [was] under the age of twelve." Iowa Code § 709.3(1)(b) (2017). Sexual abuse occurs when a sex act is performed upon a child, among other instances. *Id.* § 709.1(3). A sex act may be performed by "contact between the finger or hand of one person and the genitalia . . . of another person." *Id.* § 702.17(3). No skin-to-skin contact is required. *Pearson*, 514 N.W.2d at 455. "The contact must be

between the specified body parts (or substitutes) and must be *sexual* in nature."
*Id.* The specific circumstances surrounding contact must be examined to determine whether it has a sexual nature. *See id.* Courts may also consider a number of factors, including, but not limited to:

> the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact.

*Id.* Embree argues there is no evidence that any contact he had with the child's genitals had a sexual purpose.

The child's father testified at trial. The father testified he and the child were at home discussing appropriate conduct in a public setting when the child told the father Embree touched the child's "groin." After further discussion, the father learned the contact had been occurring for about six months, and he contacted police.

The child at issue also testified at trial. The child testified Embree touched the child's privates over clothing on more than one occasion in the living room and other areas of Embree's home. The child both asked Embree to stop and moved his hands away, but Embree sometimes continued to touch the child. The child also said some of the touching occurred in the living room while the older sibling was present but playing video games. Testimony from multiple witnesses revealed the child at issue would sometimes go into Embree's bedroom and lock the door. Testimony varied on whether Embree was with the child in the bedroom on those occasions. The older sibling testified the child at issue and Embree would wrestle

in the bedroom, both with the door open and closed. The older sibling testified to knocking or pounding on the bedroom door when locked, "knocking over and over again," and said it was "quite a while" before anyone would unlock and open the door. Embree testified the door would be unlocked in ten to fifteen seconds after anyone knocked. The older sibling never witnessed any inappropriate contact between Embree and the child at issue.

The detective who investigated and interviewed Embree testified. Several photographs and videos of children with Embree or at the Embree residence were found on electronic devices. The photos and videos were captured by the children and by Embree. Several photos and videos featured the child at issue alone, with other children, and with Embree. Embree testified he shared those photos and videos with parents of the children. The detective testified that when asked about contact with the child's genitals, Embree was

> sure that at some point in time that he had touched [the child] in [the child's] private area because of their wrestling. He stated it was not sexual.
>     But he's sure that he did touch [the child] at different times between [the child's] legs and [the child's] private area. He said it was over the clothes. He denied touching [the child] under [the child's] clothes except for when he would tickle [the child], and other than that, basically it was because of the—that they were wrestling and stuff like that.

On cross-examination, the detective testified that Embree clarified the tickling was on the child's belly area. The detective testified that Embree also admitted in his interview that the child would climb on him and sit on his knee. The detective commented it seemed strange that Embree, in his thirties, reported he could not keep the child, then five years old, from locking the bedroom door. But, testimony shows the child frequently locked doors in playing with the older sibling.

Embree also testified at trial. His testimony revealed that initially when the children came into his home, there was no door leading into the bedroom. After the door was installed, there were gaps in the frame that allow a person to see into the bedroom. Furthermore, he testified any contact he had with the child's genital area came from a horse game in which children would climb on his back and race into the bedroom. Embree insisted none of his contact with the child was sexual in nature.

Based on the record before this court, there is no question whether Embree had contact with the child's genitalia or that the child was under the age of twelve. The record reveals the child spent time alone with Embree in his bedroom and sometimes the bedroom door was closed and locked. The record also reveals the child's older sibling tried to enter the bedroom when Embree and the child were engaged in horseplay in the bedroom. Whether it took seconds or minutes for the door to be unlocked is irrelevant. Even though Embree insisted his contact with the child's genitals was innocuous, the child's testimony reveals repeated, purposeful contact between Embree's hand and the child's genitals. The circumstances of this case "do more than create speculation, suspicion, or conjecture." *Fintel*, 689 N.W.2d at 100. The child's testimony, if believed by the jury, together with undisputed evidence, was sufficient evidence upon which the jury could conclude Embree was guilty beyond a reasonable doubt. Accordingly, we affirm Embree's conviction of sexual abuse in the second degree.

**AFFIRMED.**